UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMC Fund, L.P., <br><br> Plaintiff, <br><br> v. <br><br> Dendreon Pharmaceuticals LLC, <br><br> Defendant. | Case No. 1:24-cv-04549 |

## COMPLAINT

Plaintiff AMC Fund, L.P. ("AMC" or "Seller") files this complaint in the above-captioned matter against Defendant Dendreon Pharmaceuticals LLC ("Dendreon" or "Buyer" and, together with AMC, the "Parties") and alleges as follows:

## NATURE OF THE CASE

1. This is a breach of contract case seeking to require Dendreon to specifically perform its obligation to close a sale under the Parties' share purchase agreement.

2. The Parties entered into a Share Purchase Agreement, dated May 17, 2022 (the "SPA" or "Agreement"), in which Dendreon agreed to purchase 2,000,000 ordinary shares, par value $0.0001 per share (the "Shares"), of Global Cord Blood Corporation ("GCBC") from AMC at a price of $6.50 per Share, for an aggregate purchase price of $13,000,000, subject to certain conditions set forth in the SPA.

3. On May 20, 2022, Dendreon, Blue Ocean Structure Investment Company Ltd. ("Blue Ocean"), and certain of their respective affiliates jointly filed a Schedule 13D/A with the U.S. Securities and Exchange Commission, disclosing their formation of a group under Rule 13d-5(b) of the Securities Exchange Act of 1934 and Dendreon's entry into the SPA.

4. In connection with its entry into the SPA, Dendreon paid AMC a nonrefundable deposit of $2,000,000. Pursuant to the terms of the SPA, the remaining $11,000,000 was payable

by Dendreon at the closing of the purchase of the Shares (the "Closing"), which was the date no later than seven calendar days after all the closing conditions were satisfied or waived.

5. Dendreon's obligation to effect the Closing was subject to satisfaction of the closing conditions set forth in Sections 6.01 and 6.02 of the SPA, all of which were satisfied on or before June 16, 2022, as detailed below.

6. Section 6.01(a) of the SPA required that no governmental entity had issued any order or injunction that would render the Closing illegal, or that prohibits, enjoins, restrains, or otherwise prevents or delays the Closing. No such order or injunction was issued.

7. Section 6.02(a) of the SPA required that each of AMC's representations and warranties be true and correct in all material respects on the Closing date. All such representations and warranties were, and continue to be, true and correct.

8. Section 6.02(b) of the SPA required that AMC perform or comply in all material respects with all agreements and covenants required to be performed or complied with before Closing. AMC complied with, and has continued to comply with, all such covenants set forth in Article V of the SPA.

9. Section 6.02(c)(i) of the SPA required the satisfaction of any one of the following three events: (1) Dendreon (or its designee) receives proxies from shareholders of GCBC constituting no less than 75% of GCBC's issued shares (an "EGM Supermajority") sufficient to validly call an Extraordinary General Meeting ("EGM") of GCBC; (2) an EGM is otherwise called or held; or (3) the shareholders of record constituting an EGM Supermajority issue a letter of notice of an EGM sponsored by Blue Ocean.

10. Similarly, Section 6.02(c)(ii) of the SPA required the satisfaction of any one of the following three events: (1) Dendreon (or its designee) receives proxies from shareholders of GCBC

as of the record date of the EGM that would constitute no less than two-thirds of votes cast by shareholders entitled to vote at the EGM (a "Special Resolution Supermajority") voting in favor of all of the resolutions tabled in the EGM, in the form or otherwise consistent with the intent of the proposed resolutions set forth in Exhibit A to the SPA; (2) delivery of such proxies in a form requested by Dendreon (or its affiliates) in a solicitation of GCBC's shareholders; or (3) a Special Resolution Supermajority otherwise votes in favor of those matters at an EGM.

11. Section 6.01(d) of the SPA required that each of AMC's closing deliveries shall have been delivered (or tendered subject only to the Closing) to Dendreon. AMC tendered the Shares when it contacted Dendreon of its desire to effect the Closing.

12. In May and/or June 2022, Blue Ocean obtained proxies from shareholders of GCBC constituting at least 75% of the issued shares, which was sufficient to call an EGM under GCBC's Amended and Restated Articles of Association.

13. According to the Schedule 13D/A jointly filed by Blue Ocean and Dendreon, on June 3, 2022, Blue Ocean delivered to GCBC's shareholders a notice to convene an EGM to be held on June 16, 2022 (the "Notice"), together with a related proxy statement. Blue Ocean's proxy statement set forth four proposed resolutions to be voted on at the EGM, which were consistent with the proposed resolutions set forth in Exhibit A of the SPA. The issuance of the Notice independently satisfied Section 6.02(c)(i) of the Agreement.

14. The EGM sponsored by Blue Ocean was held on June 16, 2022. By calling and holding the EGM, Section 6.02(c)(i) of the Agreement was independently satisfied.

15. According to the Schedule 13D/A jointly filed by Blue Ocean and Dendreon "the holders of 104,369,577 shares out of 121,551,075 total issued and outstanding shares of GCBC,

or 85.86%, cast votes at the EGM." According to the Schedule 13D/A, each of the proposed resolutions received affirmative votes "For" in excess of 97%.

16. Because shareholders constituting a Special Resolution Supermajority overwhelmingly voted in favor of the proposed resolutions at the EGM as set forth in Exhibit A of the SPA, Section 6.02(c)(ii) of the SPA was satisfied.

17. Upon completion of the EGM on June 16, 2022, all of the closing conditions were satisfied, which in turn triggered Dendreon's obligation to effect the Closing.

18. Blue Ocean and Dendreon issued a press release on June 16, 2022, announcing the successful approval of all resolutions at the EGM.

19. On June 16, 2022, however, GCBC issued a statement claiming that the EGM had not been validly convened, stating (incorrectly) that the "EGM was convened without the requisite threshold of 75% [of the issued shares] having been met."

20. According to the June 22, 2022 Schedule 13D/A jointly filed by Blue Ocean and Dendreon, GCBC challenged the validity of the EGM through a lawsuit in Cayman Islands. The Grand Court of the Cayman Islands issued an injunction order on July 6, 2022, that temporarily enjoined the resolutions passed at the June 16, 2022 EGM from being implemented (the "First Cayman Order"). The First Cayman Order also stated, among other things, that Blue Ocean may not rely on any such resolutions and/or to convene any additional EGMs or other meetings until further order from that Court.

21. Neither the First Cayman Order nor the events leading up to it changed the fact that the SPA's Sections 6.01 and 6.02 Closing conditions had been satisfied.

22. Despite GCBC's unfounded objection, the Closing Payment Amount became due on June 23, 2022, pursuant to Section 2.02(b) of the SPA, as this date was "the date that is no later

than seven (7) calendar days following the date all of the conditions to the Closing have been satisfied or waived."

23. On July 1, 2022, Dendreon and AMC executed a Side Letter Agreement (the "Letter Agreement") pursuant to which Dendreon paid AMC an additional deposit of $2,000,000 (the "Additional Deposit Amount"), leaving $9,000,000 unpaid under the SPA (the "Adjusted Closing Payment Amount").

24. On July 25, 2022, AMC sent a demand letter to Dendreon through its counsel requesting payment of the Adjusted Closing Payment Amount.

25. On January 25, 2023, AMC sent a second demand letter to Dendreon through its counsel requesting payment of the Adjusted Closing Payment Amount.

26. On September 8, 2023, the Grand Court of the Cayman Islands issued a written Order and Reasons for Decision (the "Second Cayman Order"). The Second Cayman Order held that the "EGM Injunction Order [from the First Cayman Order] is discharged." In support of its Order, the Cayman Court issued its Reasons for Decision, explaining in Paragraph 6(c) that "instead of continuing the EGM Injunction of 15 June 2022 restraining the implementation of the resolutions purportedly passed at the 16 June 2022 EGM, that injunction should be discharged." In fact, the Cayman Court indicated that the EGM injunction was obtained in part through misconduct that came precariously close to fraud, including the submission of a forged bank statement as evidence.

27. Following the Second Cayman Order, AMC sent a third demand letter to Dendreon through its counsel on September 19, 2023, requesting payment of the Adjusted Closing Payment Amount. Dendreon, however, rebuked this request and again refused to pay the Adjusted Closing Payment Amount.

28. AMC now seeks to obtain an order from this Court that grants declaratory relief; requires Dendreon to specifically perform its obligations under the Agreement; holds that Dendreon breached the Agreement, which directly caused AMC to suffer damages; and awards AMC its costs and expenses, including attorneys' fees, incurred in bringing this lawsuit.

**PARTIES**

29. Plaintiff AMC Fund, L.P. is a Delaware limited partnership with citizenship in Kansas, Missouri, New York, and South Dakota. AMC's general partner is KCM Capital, Inc., a Missouri corporation with a principal place of business in Kansas. KCM Capital, Inc. became AMC's general partner as of January 1, 2023. AMC's limited partners are the Kent C. McCarthy Revocable Trust (whose trustee is a citizen of Kansas), the Mary E. McCarthy Revocable Trust (whose trustee is a citizen of Kansas), MAC Fund, LLC (whose members are citizens of New York and South Dakota), and MAC Fund II, LLC (whose members are citizens of New York and South Dakota).

30. Defendant Dendreon Pharmaceuticals LLC is a Delaware limited liability company that is wholly owned by Nanjing Xinjiekou Department Store Co., Ltd., which is a company incorporated in and operates its principal place of business in the People's Republic of China. Per Sections 8.01 and 8.10 of the Agreement, Dendreon consented to service by registered or certified mail to the attention of Cheng Zeng at 1700 Saturn Way Seal Beach, CA 90740 with copies sent to the attention of Qiang Li and James Chang at DLA Piper UK LLP, 36/F, Shanghai World Financial Center, 100 Century Avenue, Pudong, Shanghai 200120, China. Also under Sections 8.01 and 8.10 of the Agreement, Dendreon further consented to service by electronic mail with notice of receipt.

## VENUE AND JURISDICTION

31. Venue and jurisdiction are proper in this Court because AMC and Dendreon negotiated and expressly agreed that the state courts of New York or the United States District Court for the Southern District of New York would have exclusive jurisdiction over any legal action arising out of or related to the Agreement. Specifically, Section 8.10 of the Agreement provides that:

> Each of the Parties irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement brought by any other party or its successors or assigns shall be brought and determined instituted in any court of competent jurisdiction within the State of New York or the United States District Court for the Southern District of New York, and in each case any appellate courts therefrom, and each of the Parties hereby irrevocably submits to the exclusive jurisdiction of the aforesaid courts for itself and with respect to its property, generally and unconditionally, with regard to any such action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby. Each of the Parties agrees not to commence any action, suit or proceeding relating thereto except in the courts described above in New York, other than actions in any court of competent jurisdiction to enforce any judgment, decree or award rendered by any such court in New York as described herein.

32. Jurisdiction is also proper in this Court under 28 U.S.C. § 1332 because the Parties are completely diverse—AMC is a citizen of Kansas, Missouri, New York, and South Dakota; Dendreon is a citizen of the People's Republic of China—and the amount in controversy exceeds $75,000.

## FACTUAL ALLEGATIONS

33. AMC is a limited partnership that is used as an investment vehicle for investments in various companies and projects around the world.

34. Dendreon is a commercial-stage biopharmaceutical company and end-to-end provider of manufacturing services for the cell therapy market.

35. GCBC is a company incorporated in the Cayman Islands that is an umbilical cord blood banking operator serving multiple regions in China. GCBC provides cord blood collection, laboratory testing, hematopoietic stem cell processing and stem cell storage services.

36. Blue Ocean is a British Virgin Islands company and the majority shareholder of GCBC.

## I. The Parties entered into the SPA, and Dendreon breached that Agreement.

37. Dendreon and AMC entered the SPA on May 17, 2022, with AMC agreeing to sell 2,000,000 ordinary Shares of GCBC to Dendreon at a price of $6.50 per share for total of $13,000,000, subject to certain conditions set forth in Article VI of the Agreement. Dendreon's Chief Executive Officer, Yong Zhang, signed the Agreement on Dendreon's behalf. Kent McCarthy, the President of AMC's general partner at that time, Jayhawk Capital Management, LLC, signed the Agreement on AMC's behalf.

38. Section 2.02(b) of the Agreement obligated Dendreon to pay AMC a $2,000,000 Deposit Amount upon executing the SPA and an $11,000,000 Closing Payment Amount,

> on the date that is no later than seven (7) calendar days following the date all of the conditions to the Closing have been satisfied or waived (other than those conditions which, by their nature, are to be satisfied on the Closing Date, but subject to the satisfaction or waiver of such condition) or such other date mutually agreed to by Buyer and Seller, in writing.

39. As detailed below, all Closing conditions were satisfied by June 16, 2022—the date that (1) an EGM Supermajority representing over 75% of the outstanding shares of GCBC validly called an EGM, and (2) a Special Resolution Supermajority of at least two-thirds of the votes cast at the EGM voted in favor of the resolution proposed thereat. Accordingly, Dendreon was obligated to tender the $11,000,000 Closing Payment Amount within seven days from that date—June 23, 2022.

40. To date, AMC has received the initial $2,000,000 Deposit Amount and a second payment of $2,000,000 as an Additional Deposit Amount to be credited against the Closing Payment Amount under the terms of the Letter Agreement, resulting in an unpaid Adjusted Closing Payment Amount of $9,000,000.

41. Through its counsel, AMC has made numerous demands to Dendreon to fulfill its contractual obligations and tender the Adjusting Closing Payment Amount, including three official demand letters dated July 25, 2022, January 25, 2023, and September 19, 2023. The Adjusted Closing Payment Amount of $9,000,000, however, remains unpaid, and Dendreon remains in breach of the Agreement.

42. Although Section 7.01(b) of the SPA permits the termination of the Agreement by either Seller or Buyer by written notice to the other if the Closing has not occurred by the Outside Date, neither Buyer nor Seller has terminated the Agreement. Nor would that right to terminate have been available to Dendreon, given its material breach of its obligation to tender payment for the Shares when that payment obligation became due.

43. Section 8.13 states that specific performance is an appropriate remedy to address breaches of the Agreement by either Party.

44. Pursuant to Section 8.13 of the Agreement, if a Party obtains relief under that provision, including specific performance, then the non-prevailing Party is liable to pay the prevailing Party's reasonable costs, fees, expenses incurred with obtaining a final award, including reasonable attorneys' fees.

**II. The Agreement contains conditions that must be satisfied or waived before the obligation to effect the Closing arose.**

45. Article VI of the Agreement sets forth certain conditions to the Closing and obligations of the Parties to effect the Closing.

46. Section 6.01 sets out a condition to the Parties' mutual obligation to effect the Closing, namely that "[n]o Governmental Entity of competent jurisdiction shall have issued any order, injunction or decree that is in effect, and no law shall have been enacted or promulgated, that renders the Closing illegal, or prohibits, enjoins, restrains or otherwise prevents or delays the Closing." Because no injunction or other governmental entity action prevented the Closing, Section 6.01 was satisfied.

47. Sections 6.02 and 6.03 list Dendreon's and AMC's conditions, respectively, that must be satisfied or waived before their obligation to close the sale is triggered.

48. Section 6.02(c)(i)-(ii) details the closing conditions relating to the successful approval of certain resolutions at an Extraordinary General Meeting to be called by GCBC shareholders. These provisions (the "EGM Closing Conditions") state:

> (i) Buyer or its designee shall have received validly executed and completed irrevocable proxies or powers of attorney from the Seller Parties and other shareholders of the Company (including shareholders of record) with respect to Shares comprising an EGM Supermajority and sufficient to validly call an Extraordinary General Meeting of the Company (the "Relevant EGM") and execute any requisite notice in relation to the Relevant EGM; provided that the conditions set forth in this Section 6.02(c)(i) shall be deemed satisfied if (A) a Relevant EGM is otherwise called or held or (B) the shareholders of record constituting an EGM Supermajority shall have issued a letter of notice of a Relevant EGM as sponsored by Blue Ocean Structure Investment Company Ltd.
>
> (ii) Buyer or its designee shall have received from Persons who are shareholders of record as of the record date of the Relevant EGM, validly executed and completed irrevocable proxies or powers of attorney that, together with the Shares owned by Buyer and its Affiliates, would constitute a Special Resolution Supermajority as of the record date of the Relevant EGM, appointing a representative designated by Buyer as such shareholders' proxy or attorney for the Relevant EGM, voting in favor of all of the resolutions tabled in the Relevant EGM by such Person, which

shall comprise resolutions in the form or otherwise consistent with the intent of the proposed resolutions set forth in Exhibit A, and voting against any resolutions tabled by the Company; provided that the conditions set forth in this Section 6.02(c)(ii) shall be deemed satisfied (A) to the extent such proxies or powers of attorney are otherwise delivered in a form requested by Buyer or its Affiliates in a solicitation of the Company's shareholders (including shareholders of record) or (B) a Special Resolution Supermajority otherwise votes in favor of such matters at a Relevant EGM.

49. Importantly, the subpoints in (i) and (ii) are disjunctive, and the satisfaction of any of the subpoints in either is sufficient to satisfy (i) or (ii), respectively. As detailed below, Sections 6.02(c)(i) and 6.02(c)(ii) both were satisfied by multiple independent events.

50. If the conditions are fulfilled and a Party refuses to close or otherwise breaches the Agreement, then specific performance is an available remedy for the non-breaching Party. All the conditions to close the sale have been satisfied, but Dendreon has refused to close and has therefore breached the Agreement.

### III. All of the conditions to close were satisfied, but Dendreon breached the Agreement by failing to effect the Closing.

51. According to the Schedule 13D/A jointly filed by Dendreon and Blue Ocean, on June 3, 2022, Blue Ocean delivered to GCBC's shareholders the Notice of an EGM to be held on June 16, 2022, at the request of holders of Shares constituting an EGM Supermajority. Before the EGM was called, Blue Ocean received proxies from GCBC's shareholders in proper form and in sufficient quantities to constitute an EGM Supermajority, which was required to validly call an EGM. Dendreon's receipt of these proxies in the valid form satisfied Section 6.02(c)(i).

52. A valid EGM was held and sponsored by Blue Ocean on June 16, 2022, which independently satisfied Section 6.02(c)(i).

53. At the EGM, GCBC's shareholders overwhelmingly voted "For" the resolutions reflected in Exhibit A of the Agreement in sufficient quantities to constitute a Special Resolution Supermajority and an EGM Super Majority. Specifically, 104,369,577 Shares out of 121,551,075

total outstanding Shares voted at the EGM, which represents 85.86% of all outstanding Shares. According to the Schedule 13D/A jointly filed by Blue Ocean and Dendreon, the following resolutions were passed at the EGM: (1) the removal of the following directors from office of the Company: Ting Zheng, Albert Chen, Mark D. Chen, Jack Chow, Dr. Ken Lu, Jennifer J. Weng and Jacky Cheng; (2) the election of the following five nominees as directors of the Company: Lingyun Zhai, Guojun Liu, Yang Wang, Shi'an Liu and Michael S. Weiss; (3) the Company refrain from the proposed acquisition of Cellenkos, Inc. ("Cellenkos"), as described in a Form 6-K filed by the Company on April 29, 2022; and (4) amendments to the Company's Articles of Association to eliminate the staggered Board of Directors and to provide shareholder protective provisions.

54. These resolutions received overwhelming, almost-unanimous support and received affirmative "For" votes of (1) 97.92%, (2) 97.88%, (3) 99.98%, and (4) 99.97%, respectively. Because GCBC shareholders constituting a Special Resolution Supermajority approved each resolution, as set forth in Exhibit A to the SPA, Section 6.02(c)(ii) was independently satisfied.

55. Section 6.02(a) was satisfied because "[e]ach of the representations and warranties of [AMC] in [the] Agreement were true and correct in all material respects" at all times. Section 6.02(b) was satisfied because AMC "performed or complied in all material respects with all agreements and covenants required of [it] by this Agreement to be performed or complied with by [it] on or prior to the Closing." And Section 6.02(d) was satisfied because AMC was prepared to tender to Dendreon the items outlined in Section 2.03(b), subject only to the Closing. Thus, all closing conditions in Section 6.02 were satisfied, including the EGM Conditions.

56. Accordingly, the Closing Payment Amount of $11,000,000 became due on June 23, 2022, per Section 2.02(b) of the SPA, as this was "the date that is no later than seven (7) calendar days following the date all of the conditions to the Closing have been satisfied or waived."

57. Dendreon, however, breached Section 2.03(a) by failing to timely tender the Closing Payment Amount of $11,000,000.

58. On July 1, 2022, Dendreon and AMC entered into the Letter Agreement, pursuant to which Dendreon paid AMC the Additional Deposit Amount of $2,000,000, leaving the $9,000,000 Adjusted Closing Payment Amount unpaid.

59. Despite AMC's repeated attempts to effect the Closing, as evidenced by its demand letters dated July 25, 2022, January 25, 2023, and September 19, 2023 to Dendreon through its counsel, the Adjusted Closing Payment Amount remains unpaid, and Dendreon remains in breach of the Agreement.

60. Dendreon threatened to terminate the SPA if AMC continued to seek payment of the Adjusted Closing Payment Amount, but Dendreon could not do so given its material breaches and has not purported to do so.

**IV. In an attempt to thwart the EGM, GCBC obtained, under false pretenses, from the Cayman Court a temporary injunction that the Cayman Court later discharged.**

61. GCBC issued a press release on June 16, 2022 announcing its (incorrect) position that the EGM was not validly convened, claiming that the 75% threshold was not met.

62. According to the June 22, 2022 Schedule 13D/A jointly filed by Blue Ocean and Dendreon, GCBC challenged the EGM and obtained a temporary injunction against Blue Ocean on June 15, 2022 in an attempt to prevent Blue Ocean from implementing the EGM resolutions. GCBC submitted misleading evidence, including a forged bank statement, in its attempt to obtain an injunction.

63. On July 6, 2022, the Grand Court of the Cayman Islands issued the First Cayman Order, granting GCBC's requested temporary injunction until further order from the Court.

64. The First Cayman Order stated, in pertinent part that:

> Until further order of the Court, any resolution or resolutions ("Resolutions") that might be passed or purported to be passed at any extraordinary general meeting of the Company to be held or purporting to be held on June 16, 2022 ("the Purported EGM") or other meeting held or purporting to be held pursuant to a Notice of Extraordinary General Meeting dated June 3, 2022 (on June 16, 2022 or any other date) shall not take effect and shall not be implemented, and Blue Ocean must not:
> - rely or purport to rely upon any such Resolutions; and/or
> - seek to convene or convene any extraordinary general meeting of the Company or other meeting.

65. On August 15 and 16, 2023, the Grand Court of the Cayman Islands held a two-day hearing to reexamine the injunction granted in the First Cayman Order (the "Cayman Hearing").

66. At the Cayman Hearing, there was significant argument regarding the grounds supporting the injunction. The party opposing the EGM injunction argued that GCBC obtained the injunction, in part, by submitting misleading evidence and forged documents to the Court.

67. The Second Cayman Order discharged the initial EGM injunction, holding that the "EGM Injunction Order [from the First Cayman Order] is discharged." In support of the Second Cayman Order, the Cayman Court issued its Reasons for Decision, explaining in Paragraph 6(c) that "instead of continuing the EGM Injunction of 15 June 2022 restraining the implementation of the resolutions purportedly passed at the 16 June 2022 EGM, that injunction should be discharged." Indeed, the Cayman Court indicated that the EGM injunction was obtained in part through misconduct that came dangerously close to fraud, including the submission of a forged bank statement as evidence.

68. The Second Cayman Order's holding removed Dendreon's purported excuse for its continued refusal to pay AMC the Adjusted Closing Payment Amount. Because all closing conditions in the Agreement, including the EGM Conditions, were and continue to be satisfied,

Dendreon was obligated to close and tender payment. Its refusal to do was and remains a material breach of the Agreement.

## CAUSES OF ACTION

### COUNT 1: Declaratory Judgment

69. AMC repeats and incorporates each and every allegation set forth above as if fully set forth herein.

70. Given the foregoing, AMC requests that the Court enter a judgment declaring that all conditions to Closing have been satisfied and that Dendreon is obligated to close. Specifically, AMC requests a declaration stating:

   a. All of the closing conditions under Article VI of the Agreement are satisfied;

   b. There are no other closing conditions that must be satisfied for the transaction to close; and

   c. Dendreon is obligated to close the transaction and specifically perform its obligations pursuant to the terms of the Agreement.

### COUNT 2: Breach of Contract and Specific Performance

71. AMC repeats and incorporates each and every allegation set forth above as if fully set forth herein.

72. The Agreement is a valid, complete, and enforceable contract, negotiated and executed by sophisticated parties, based on a clear, mutual understanding of the terms that are sufficiently definite and certain to enable the Court to decree specific performance.

73. The Parties agreed in Section 8.13 of the Agreement that specific performance is an appropriate remedy if either party breaches the Agreement or fails to perform its obligations under the Agreement.

74. AMC has fully performed its obligations under the Agreement, including the EGM conditions, triggering Dendreon's obligation to effect the Closing and tender payment of the

Adjusted Closing Payment Amount of $9,000,000 to AMC. AMC was and remains ready, willing, and able to perform its obligations under the Agreement—i.e., to effect the Closing.

75. Dendreon is obligated under the Agreement (as modified by the Letter Agreement) to pay AMC the Adjusted Closing Payment Amount of $9,000,000, but Dendreon has breached the Agreement by failing to pay this sum when it became due on July 23, 2022.

76. Despite multiple demands from AMC, Dendreon has unjustifiably refused to perform its obligations under the Agreement to close and tender payment of the Adjusted Closing Payment Amount to AMC. Dendreon has the means, power, and authority to specifically perform its obligations under the Agreement and nothing is preventing Dendreon from performing its obligations under the Agreement. Without specific performance, AMC would have no other adequate remedy at law.

77. AMC is therefore entitled to an order of specific performance requiring Dendreon to close the transaction within 10 days of an order from the Court and to pay AMC the Adjusted Closing Payment Amount of $9,000,000, plus accrued interest from the date of Dendreon's breach.

78. Because AMC was forced to bring this legal action to enforce specifically the performance of the Agreement, upon AMC obtaining a final and non-appealable judgment, Dendreon is obligated to pay AMC's costs, fees, and expenses, including attorneys' fees, incurred in obtaining that judgment pursuant to Section 8.13 of the Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff AMC Fund, L.P. requests entry of a judgment against Defendant Dendreon Pharmaceuticals LLC as follows:

    a. A declaration that all closing conditions have been satisfied, and Dendreon is obligated to close under the terms of the Agreement.

b. An order requiring Dendreon to specifically perform its obligations under the Agreement, close the transaction, and tender the $9,000,000 Adjusted Closing Payment Amount to AMC, plus accrued interest from the date of Dendreon's breach.

c. An order holding that Dendreon breached the Agreement by failing to close, which directly caused AMC to suffer at least $9,000,000 in damages for which Dendreon is liable to AMC.

d. An order requiring Dendreon to pay AMC's costs, fees, and expenses, including attorneys' fees, upon AMC obtaining a non-appealable judgment for specific performance.

e. Granting such other and further relief as this Court deems just and proper.

Dated: June 13, 2024
New York, New York

Respectfully submitted,

BAKER BOTTS L.L.P.

*/s/ Richard B. Harper*

Richard B. Harper
New York Bar No. 4596615
S.D.N.Y. Bar No. RH5979
richard.harper@bakerbotts.com
30 Rockefeller Plaza
New York, New York 10112-4498
Telephone: (212) 408-2500
Fax: (212) 408-2501

Danny David
Texas Bar No. 24028267
danny.david@bakerbotts.com
(pro hac vice application to be filed)
Amy Pharr Hefley
Texas Bar No. 24046046
amy.hefley@bakerbotts.com
(application for admission to be filed)
Dominic Cruciani
Texas Bar No. 24116238
dominic.cruciani@bakerbotts.com
(pro hac vice application to be filed)
910 Louisiana
Houston, Texas 77002
Telephone: (713) 229-1234
Fax: (713) 229-1522

***Attorneys for Plaintiff AMC Fund, L.P.***